UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

BROCK P. BOUDREAUX, ET AL. \*CIVIL NO. 6:14-2267

VERSUS \*JUDGE HAIK

SCHLUMBERGER TECHNOLOGY CORP.,
ET AL. \*MAGISTRATE JUDGE HILL

## MEMORANDUM RULING

Pending before the undersigned is the Plaintiffs' Motion for Conditional Certification filed on December 23, 2014. [rec. doc. 33]. Defendant, Schlumberger Technology Corp. ("Schlumberger"), filed opposition on January 22, 2015. [rec. doc. 41]. Plaintiffs filed a reply on February 2, 2015. [rec. doc. 44]. Schlumberger supplemented its opposition to include an additional declaration on February 4, 2015. [rec. doc. 47]. Oral Argument on the Motion was held on February 5, 2015.

For the following reasons, plaintiffs' Motion for Conditional Certification is **GRANTED,** and two Putative Classes are hereby conditionally certified: (1) Directional Drillers, and (2) Operators.

## BACKGROUND

This case involves claims arising under the Fair Labor Standards Act ("FLSA"). Plaintiffs are Directional Drillers ("Drillers"), Measurement While Drilling Operators ("MWD") and Logging While Drilling Operators ("LWD") (both of which are hereinafter referred to collectively as "Operators"), who allege that Schlumberger failed to pay them

overtime as required by the FLSA. The Putative Class Members consist of all Drillers and Operators employed by Schlumberger during the past three years (collectively, the "Putative Class Members").

Plaintiffs allege that they have been, and continue to be, denied overtime pay as a result of a "widespread corporate policy that uniformly misclassifies them as exempt from the FLSA overtime provisions, regardless of any individualized factor such as experience, age, job duties, or geography." [rec. doc. 33, p. 2]. They assert that as a result of Schlumberger's classification decision, it paid all Putative Class Members a salary plus day rate basis, with no overtime pay. [*Id.*].

In the instant motion, Plaintiffs move to conditionally certify a collective action under 29 U.S.C. § 216(b) of the FLSA, and that judicially-approved notice be sent to all Putative Class Members by first class mail and e-mail. If granted conditional certification under 29 U.S.C. § 216(b), plaintiffs request that Schlumberger be required to produce the names, addresses, telephone addresses and e-mail addresses for each Putative Class Member in a usable electronic format, and authorize a 60-day notice period for Putative Class Members to Join the case.

Schlumberger denies the plaintiffs' allegations and opposes collective action certification under 29 U.S.C. § 216(b). Its primary position is that the plaintiffs are not "similarly situated" for purposes of maintaining a collective action. More specifically, Schlumberger claims that the different job classifications held by the plaintiffs require

case-by-case analysis, and are thus inappropriate for a collective action.

## LAW AND ANALYSIS

### *Legal Standard*

The Fair Labor Standards Act sets a general minimum wage for employees engaged in commerce. 29 U.S.C. § 206(a)(1). Section 207(a) requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily defined maximum hours. 29 U.S.C. § 207(a). The FLSA creates a cause of action for violations of provisions of the Act, which include the minimum wage and overtime provisions. 29 U.S.C. § 216(b).

Section 216(b) of the FLSA permits a plaintiff to maintain such an action on "behalf of himself . . . and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). A collective action affords plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 486 (1989).

Unlike class actions brought under Fed. R. Civ. Proc. 23, a collective action under the FLSA provides an "opt-in" rather than an "opt-out" procedure for potential plaintiffs. *Mooney v. Aramco Services*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90-91, 123 S.Ct. 2148, 156 L.Ed.2d

84 (2003). District courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) in FLSA actions by facilitating notice to potential plaintiffs. *Hoffman-La Roche, Inc.*, 493 U.S. at 169-170.

Two requirements must be met to maintain a collective action under the FLSA. *Green v. Plantation of Louisiana, LLC*, 2010 WL 5256354, *3 (*quoting Whitworth v. Chiles Offshore Corp.*, 1992 WL 235907, *1 (E.D. La. 1992) (McNamara, J)). First, the named representatives and the members of the prospective FLSA class must be similarly situated. *Id*. There must be "some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Id.*; *England v. New Century Financial Corp.*, 370 F.Supp.2d 504, 508 (M.D. La. 2005). Second, the action at issue must be one of general effect. *Whitworth*, 1992 WL 235907, at *1. Accordingly, courts have held that a court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff and not from any generally applicable rule, policy or practice. *Id.* (*citing Burt v. Manville Sales, Corp*, 116 F.R.D. 276, 277 (D. Colo. 1987)); *Basco v. Wal-Mart Stores Inc.*, 2004 WL 1497709, at *5 (E.D. La. 2004).

Plaintiffs bear the burden of establishing that they are "similarly situated" to the proposed class. *Basco*, 2004 WL 1497709, at *5 (*citing Pfohl v. Farmers Ins. Group*, 2004 WL 554834 (C.D. Cal. March 1, 2004, *citing White v. Osmose, Inc.*, 204 F.Supp.2d 1309, 1313 (M.D. Ala. 2002)). The FLSA does not define the term "similarly situated", however,

under the jurisprudence, "[w]hether employees are 'similarly situated' is determined in reference to their 'job requirements and with regard to their pay provisions.'" *Xavier v. Belfor USA Group, Inc.*, 585 F.Supp.2d 873, 877 (E.D. La. 2008) (Zainey, J) (*quoting Lima v. International Catastrophe Solutions, Inc.*, 493 F.Supp.2d 793, 798 (E.D. La. 2007)); *Lentz v. Spanky's Restaurant II, Inc.,* 491 F.Supp.2d 663, 669 (N.D. Tex. 2007); *Eggelston v. Sawyer Sportsbar, Inc.*, 2010 WL 2639897, *3 (S.D. Tex. June 28, 2010) (noting that "a minimal showing that all members of the class are similarly situated in terms of job requirements and pay practice" is required).

Courts have held that "similarly situated" does not mean identically situated. *Basco,* 2004 WL 1497709, at *5 (*citing Crain v. Helmerich and Payne Intern'l Drilling Co.*, 1992 WL 91946, *2 (E.D. La. 1992). Thus, "[s]light differences in job duties or functions do not run afoul of the similarly situated requirement." *Tolentino v. C & J Spec-Rent Services, Inc.*, 716 F.Supp.2d 642, 652 (S.D. Tex. 2010). However, "if the job duties among potential members of the class vary significantly, then class certification should not be granted." *Id.* (*citing Dreyer v. Baker Hughes Oilfield Operations, Inc.*, 2008 WL 5204149, at *2 (S.D. Tex. Dec. 11, 2008)); *Harris v. Fee Transportation Services, Inc.*, 2006 WL 1994586, *5 (N.D. Tex. May 15, 2006).

Likewise, if the named plaintiffs and potential class members are compensated differently, class certification is not appropriate. *See Lentz v. Spanky's Restaurant II, Inc.*, 491 F.Supp.2d 663, 669 (N.D. Texas 2007); *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413

(D. Or. 2002) (collective action certification denied based on the fact that the potential plaintiffs held different job titles, with different payment structures – piece-rate, hourly and salaried).

Courts have utilized two methods for determining whether plaintiffs are similarly situated such that a collective action should be certified, the "two-step" method developed in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D. N.J. 1987), and the "spurious class action" procedure employed by the district court in *Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990).[1] *Mooney*, 54 F.3d at 1213-1215. The Fifth Circuit has expressly refused to endorse either method over the other. *Mooney*, 54 F.3d at 1216; *Vanzzini v. Action Meat Distributors, Inc.*, 995 F.Supp.2d 703, 719 (S.D. Texas 2014).

However, the prevailing method seems to be the "two-step" approach. *Lang v. DirecTV, Inc.*, 735 F.Supp.2d 421, 435 (E.D. La. 2010) (Vance, J) (*citing Johnson v. Big Lots Stores, Inc.*, 561 F.Supp.2d 567, 569 (E.D. La. 2008) (conditional certification is the majority approach); *Basco*, 2004 WL 1497709, at *4 ("the two-step *ad hoc* approach is the preferred method for making the similarly situated analysis"); *England*, 370 F.Supp.2d at 509 (noting that the two step approach "has been 'embraced' more often in the Fifth Circuit than the 'Spurious Class Action'" approach).

---

[1] The "spurious class action" procedure, derives from the "spurious" class action procedure previously eliminated from Fed. R. Civ. P. 23. *Mooney*, 54 F.3d at 1214. Under this approach, the court considers factors similar to those considered in Rule 23(c) cases, that is, "numerosity," "commonality," "typicality," and "adequacy of representation," to determine whether a class should be certified. *Id.* Neither party argues that this procedure should be applied in this case.

This method is consistent with the Fifth Circuit's conclusion in *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975), that "[t]here is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b)," namely the "opt out" procedure for class members under Rule 23 as contrasted with the "opt in" procedure under § 216(b).  *See also Donovan v. Univ. of Texas at El Paso*, 643 F.2d 1201, 1206 (5th Cir. 1981) ("[t]he statutory framework of enforcement procedures of the FLSA and those of Title VII are crucially different, but this difference highlights even more why Rule 23 is not needed in FLSA suits. The FLSA procedure, in effect, constitutes a congressionally developed alternative to the F. R. Civ. P. 23 procedures.").

Finally, the Fifth Circuit has referred to the two-step approach as the typical manner in which collective actions proceed.  *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n. 2 (5th Cir. 2008).  Based on the above, the undersigned finds that the "two-step"method is the preferred method in the Fifth Circuit for the analysis and will be used by this Court.

The "two-step" method lends itself to *ad hoc* analysis on a case-by-case basis. *Mooney*, 54 F.3d at 1213.  Under the two-step method, the Court analyzes the "similarly situated" inquiry using a two-step analysis.  In the first step, the "notice stage," the Court determines whether notice should be given to potential members of the collective action, "usually based only on the pleadings and any affidavits."  *Mooney*, 54 F.3d at 1213-1214. Because the court has little evidence at this stage, "this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class."

7

*Id*. at 1214.

If the Court grants conditional certification, notice to prospective claimants is issued, and the case proceeds as a collective action through discovery. *Id*. In the second step, generally done on the defendant's motion to decertify the conditional class filed after discovery is largely complete, the court considers, with the benefit of considerably more information, whether the employees are similarly situated. *Id*. If the court decides that a collective class action is inappropriate, then it dismisses the opt-in plaintiffs and the case proceeds on the named plaintiffs' individual claims only. *Id.*

When considering whether to conditionally certify a collective action, the court has a responsibility to refrain from stirring up unwarranted litigation. *H&R Block, Ltd. v. Housden,* 186 F.R.D. 399, 401 (E.D. Texas 1999) (*citing D'Anna v. M/A-COM, Inc*., 903 F.Supp. 889, 894 (D. Md. 1995)); *Xavier*, 585 F.Supp.2d at 878. This is so because "employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expenses." *Id*. (*quoting D'Anna*, 903 F.Supp. at 894); *Xavier*, 585 F.Supp.2d at 877.

On the other hand, a collective action can be an effective mechanism for resolving common issues in one consolidated action. *See Hoffmann-La Roche*, 493 U.S. at 170. Thus, courts have endorsed the sending of notice early in the proceeding as a means of facilitating the FSLA's broad remedial purpose and promoting efficient case management. *See Realite v. Ark Restaurants Corp*., 7 F.Supp.2d 303, 306 (S.D. N.Y. 1998) (and cases cited therein).

However, "an action dominated by issues particular to individual plaintiffs cannot be administered efficiently because individual issues predominate over collective concerns." *Sheffield*, 211 F.R.D. at 413. Therefore, "courts must strive to balance the efficiency of aggregating claims in one action against the expense and inconvenience of frivolous litigation." *Sims v. Housing Authority City of El Paso*, 2010 WL 2900429, *2 (W.D. Texas July 19, 2010).

At the "notice stage", the grant of conditional certification requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214 n. 8 (*citing Sperling v. Hoffman-La Roche, Inc*., 118 F.R.D. at 407). Moreover, "there must be a showing of some identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency." *Tolentino,* 2010 WL 2196261, at *3; *Basco*, 2004 WL 1497709, at *5 (*citing Barron v. Henry County School System*, 242 F.Supp.2d 1096, 1103 (M.D. Ala. 2003)).

The plaintiff also bears the burden of making a preliminary factual showing that similarly situated individuals exist. *Lima*, 493 F.Supp.2d at 798. Thus, while the standard at the "notice stage" is lenient, it is by no means automatic. *Id*.; *Xavier*, 585 F.Supp.2d at 878. Indeed, it "would be a waste of the Court's and litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Freeman v. Wal-Mart, Inc*., 256 F.Supp.2d 941, 945 (W.D. Ark. 2003).

9

In this case, plaintiffs contend that the Driller and Operator Classes are similarly situated in terms of their job titles, duties, and compensation. [rec. doc. 33, p. 2]. Both Drillers and Operators are paid according to the same compensation plan, which is salary plus day rate. In support of this argument, plaintiffs attached the Declarations of Micheal Ainsworth ("Ainsworth Declaration"), Brett L. Bordelon ("Bordelon Declaration"), Brock Boudreaux ("Boudreaux Declaration"), Kiel Crabtree ("Crabtree Declaration"), Nathaniel B. Morse ("Morse Declaration"), Leonard Rabin ("Rabin Declaration"), Manuel De Jesus Siliezar ("Siliezar Declaration"), and Joseph Thibodeaux ("Thibodeaux Declaration"), as well as Schlumberger's Job Detail Sheets for Drillers [rec. doc. 33, Exhibit 9] and Operators [rec. doc. 33, Exhibit 10], and certain publically available Schlumberger documents and governmental filings.

According to the declarations, the Drillers' duties consisted of performing technical and manual labor-type duties, particularly drilling a wellbore along a prescribed path as determined by a "well plan." [Ainsworth Declaration, ¶ 2; Bordelon Declaration, ¶¶ 2-4; Rabin Declaration, ¶ 2-4]. Drillers input various data from the well plan into the computer system used throughout the job. [Ainsworth Declaration, ¶ 5; Bordelon Declaration, ¶ 5; Rabin Declaration, ¶ 5]

A Driller's job is to ensure the correct assembly of the Bottom Hole Assembly ("BHA"), verify the drill bend orientation, and deploy the BHA down well. [Ainsworth Declaration, ¶¶ 6, 7; Bordelon Declaration, ¶ 7; Rabin Declaration, ¶ 7]. Additionally, Drillers maintain directional drilling equipment, load and unload the equipment, and build

the equipment. [Ainsworth Declaration, ¶ 8; Bordelon Declaration, ¶ 8; Rabin Declaration, ¶ 8]. Drillers also monitor the drilling parameters and stress on the tools. [Ainsworth Declaration, ¶ 13; Bordelon Declaration, ¶ 13; Rabin Declaration, ¶ 13].

Drillers were paid a base salary and day rate. [Ainsworth Declaration, ¶ 21; Bordelon Declaration, ¶ 37; Rabin Declaration, ¶ 21]. They work significant amounts of overtime, often more than 84 hours a week. [Ainsworth Declaration, ¶ 21; Bordelon Declaration,¶ 37; Rabin Declaration, ¶ 21]. However, they were not paid time and a half for any hours worked over 40 in a single workweek. [Ainsworth Declaration, ¶ 21; Bordelon Declaration, ¶ 37; Rabin Declaration, ¶ 21].

Operators spend the majority of their time rigging up, operating oilfield machinery, collecting/relaying data and reporting their daily activities to consultants who oversee the entire operations on the jobsite and then rigging down. [Boudreaux Declaration, ¶ 2; Crabtree Declaration, ¶ 2; Morse Declaration, ¶ 2; Siliezar Declaration, ¶ 2; Thibodeaux Declaration, ¶ 2]. While rigging up, Operators unpack the various tools and equipment. [Boudreaux Declaration, ¶ 3; Crabtree Declaration, ¶ 3; Morse Declaration, ¶ 3; Siliezar Declaration, ¶ 3; Thibodeaux Declaration, ¶ 3]. Additionally, these Operators manually assemble, test and perform maintenance on the tools, which are used to provide data regarding drilling conditions down in the well. [Boudreaux Declaration, ¶¶ 3-5; Crabtree Declaration, ¶¶ 4-5; Morse Declaration, ¶¶ 4-5; Siliezar Declaration, ¶¶ 4-5; Thibodeaux Declaration, ¶¶ 4-5]. Once the Operators have prepared the tool, they help connect the tool

to the bottom hole drill section.  [Boudreaux Declaration, ¶ 6; Crabtree Declaration, ¶ 6; Morse Declaration, ¶ 6; Siliezar Declaration, ¶ 6; Thibodeaux Declaration, ¶ 6].

In addition, Operators set up the propriety computer system, connect the computer system to the tools, and program according to the well plan specifications.  [Boudreaux Declaration, ¶ 7; Crabtree Declaration, ¶ 7; Morse Declaration, ¶ 7; Siliezar Declaration, ¶ 7; Thibodeaux Declaration, ¶ 7].  The specifications are provided to Operators by various consultants.  [Boudreaux Declaration, ¶ 8; Crabtree Declaration, ¶ 8; Morse Declaration, ¶ 8; Siliezar Declaration, ¶ 8; Thibodeaux Declaration, ¶ 8].

Occasionally, Operators perform various manual labor maintenance tasks around the well site relating to the equipment used.  [Boudreaux Declaration, ¶ 12; Crabtree Declaration, ¶ 12; Morse Declaration, ¶ 12; Siliezar Declaration, ¶ 12; Thibodeaux Declaration, ¶ 12].

Like Drillers, Operators are paid a base salary and day rate.  [Boudreaux Declaration, ¶ 14; Crabtree Declaration, ¶ 14; Morse Declaration, ¶ 14; Siliezar Declaration, ¶ 14; Thibodeaux Declaration, ¶ 14].  Additionally, Operators work significant amounts of overtime, often more than 84 hours a week, and were not paid time and a half for any hours worked over 40 in a single workweek.  [Boudreaux Declaration, ¶ 14; Crabtree Declaration, ¶ 15; Morse Declaration, ¶ 15; Siliezar Declaration, ¶ 14; Thibodeaux Declaration, ¶ 14].

According to Schlumberger's Career page, the qualifications for Drillers are a two or three-year associate degree from technical college, or a bachelor's or master's degree in engineering or applied science; a minimum of five years of experience as an oilfield

directional driller; thorough knowledge of state-of-the-art drilling and surveying technologies and practices and the ability to communicate effectively verbally in writing with managers, peers, and clients. [rec. doc. 33, Exhibit 9].

The qualifications for MWD Field Specialist are a bachelor's degree in engineering, geosciences, petroleum geology or equivalent; working knowledge of well site operations and a good understanding of the drilling process; minimum three years' experience as a MWD/LWD engineer or specialist, and fluent English, with any additional language being a plus. [rec. doc. 33, Exhibit 10].

In opposition, Schlumberger argues that each of the Driller and Operator positions within the proposed Putative Class are distinctly different in terms of degree requirements and field experience. Within these positions are four wage grades for Drillers and five for Operators based on training and experience milestones. [rec. doc. 41, Declaration of Ian Henkes ("Henkes Declaration"), ¶¶ 6, 18; Declaration of Wayne Downey ("Downey Declaration"), ¶ 4]. Schlumberger further breaks down the Driller and Operator jobs into subcategories: Pathfinder DD Specialist, Pathfinder DD Specialist Cross Trained, Pathfinder Field Engineer and Pathfinder MWD Specialist. [rec. doc. 47, Declaration of Uzma Babar ("Babar Declaration"), Exhibit 1, ¶ 3; Exhibits A-D].

Of the Driller and Operator jobs, some require engineering degrees and some do not. [Babar Declaration, ¶¶ 5, 7]. Additionally, some of these Drillers and LWD jobs are cross-trained to perform both Driller and MWD functions. [Babar Declaration, ¶ 11; Henkes

13

Declaration, ¶¶ 14-15]. All Drillers, MWD and LWD categories are paid on a salary basis in excess of $455 per week, and also receive additional pay in the form of a day rate when on site. [Babar Declaration, ¶ 12]. Thus, Schlumberger's own evidence shows that the Drillers and Operators are similarly situated in terms of job qualifications, duties and pay provisions.

At the hearing, Plaintiffs argued that Judge Rosenthal's recently issued decision in *Meyer v. Phoenix Technology Services USA Inc.*, No. 4:14-cv-01490 (S.D. Texas, January 27, 2015), in which plaintiffs' counsel, Richard Burch, was involved, should apply to this case. In *Meyer*, Judge Rosenthal granted conditional certification as to "all MWD operators employed by Phoenix at any time between January 26, 2012 and December 31, 2014, whose pay was calculated from base salary and a day rate." He divided the class into three subclasses: Lead MWDs, Night MWDs, and trainees.

Schlumberger argued that *Meyer* is distinguishable because Schlumberger is a much bigger operation than Phoenix, and that a different organizational structure applies to Schlumberger's employees' duties.

While *Meyer* involves an unpublished opinion from outside of this district, the undersigned finds it persuasive. After reviewing the pleadings in *Meyer*, I find that the factual scenario, while not identical, is substantially similar to that the instant case.

At this stage, the grant of plaintiffs' motion requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan. *Green*, *supra*. The undersigned finds that plaintiffs have carried that burden.

Moreover, plaintiffs must show some identifiable factual or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency. *Green, supra*. Preliminary, that appears to be the case here. Thus, plaintiffs have met this burden.

Finally, plaintiffs also bear the burden, although lenient, of making a preliminary factual showing that similarly situated individuals exist. *Green, supra*. At this stage, absolute identity of obligations and job duties under the classification is not necessary.[2] Under the lenient standard applied at the notice stage of the collective action, the undersigned finds, based on the pleadings and declarations, that conditional certification of two classes, Drillers and Operators is warranted.[3]

## CONCLUSION

For these reasons;

**IT IS ORDERED** that the Motion for Conditional Certification is **GRANTED**, and that the following two Putative Classes are conditionally certified: (1) Directional Drillers, and (2) Operators.

Signed, February 25, 2015, at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

---

[2]At this stage of the proceedings, the undersigned finds that it is inappropriate to conditionally certify a collective action dividing the plaintiffs into subclasses. While Schlumberger may ultimately prove correct, and individual issues may, in the end, render a collective action inappropriate, the undersigned finds that consideration of these factual issues is more appropriately raised on a motion to decertify the collective action once discovery has been conducted. *Green*, 2010 WL 5256354 at *12.

[3]The Court finds, at least at this preliminary phase, that LWDs and MWDs, although they do not always perform identical duties, should be placed in the same class: Operators.