# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | | |
|---|---|---|
| **BROCK BOUDREAUX, KHALED BARAKE, and MICHAEL AINSWORTH,** Individually and On Behalf of All Others Similarly Situated, | §<br>§<br>§<br>§<br>§<br>§ | **Docket No. 6:14-cv-02267-RRS-CBW** |
| | § | **JUDGE ROBERT SUMMERHAYS** |
| *Plaintiffs*, | §<br>§ | |
| **v.** | §<br>§ | |
| **SCHLUMBERGER TECH CORP.** | §<br>§<br>§ | |
| *Defendant*. | § | |

## PLAINTIFFS' OPPOSITION TO STC'S
## MOTIONS FOR SUMMARY JUDGMENT RE: SEVERANCE

**Michael A. Josephson**
Fed. Id 27157
Texas State Bar No. 24014780
**Andrew W. Dunlap**
Fed Id. 1093163
Texas State Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

**Richard J. (Rex) Burch**
Fed. Id. 21615
Texas State Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

Kenneth W. DeJean
Louisiana Bar Roll No. 4817
**Law Offices of Kenneth DeJean**
417 W. University Avenue
P.O. Box 4325
Lafayette, Louisiana 70502
Tel: (337) 235-5294
Fax: (337) 235-1095
kwdejean@kwdejean.com

**Attorneys in Charge for Plaintiffs**

# TABLE OF CONTENTS

1. SUMMARY. .................................................................................................................... 1

2. BACKGROUND. ............................................................................................................. 2

3. STANDARD OF REVIEW. ............................................................................................... 5

4. DAVIS IS NOT PROHIBITED FROM PARTICIPATING IN THIS COLLECTIVE ACTION. .......................... 6

5. STC WAIVED THE RIGHT TO ENFORCE THE RELEASES. ................................................ 7

6. JUDICIAL ECONOMY FAVORS DENYING STC'S MOTIONS. ..........................................11

7. CONCLUSION. ..............................................................................................................12

TABLE OF AUTHORITY

PAGE(S)

Cases

*Al Rushaid v. Nat'l Oilwell Varco, Inc.,*
 757 F.3d 416 (5th Cir. 2014) ................................................................................2

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242 (1986) ............................................................................................5

*Barrentine v. Arkansas-Best Freight System, Inc.,*
 450 U.S. 728 (1981) ............................................................................................7

*Barrientos v. City of Eagle Pass, Texas,*
 444 Fed. App'x. 756 (5th Cir. 2011) ....................................................................5

*Bodle v. TXL Mortg. Corp.,*
 788 F.3d 159 (5th Cir. 2015) ................................................................................7

*Brooklyn Sav. Bank v. O'Neil,*
 324 U.S. 697 (1945) ............................................................................................7

*C&C Investment Properties, LLC v. Trustmark Nat'l Bank,*
 838 F.3d 655 (5th Cir. 2016) ................................................................................8

*Carter v. Countrywide Credit Industries, Inc.,*
 362 F.3d 294 (5th Cir. 2004) ................................................................................7

*Celotex Corp. v. Catrett,*
 477 U.S. 317 (1986) ............................................................................................5

*City of Pinehurst v. Spooner Addition Water Co.,*
 432 S.W.2d 515 (Tex.1968) ..................................................................................6

*City of the Colony v. North Texas Mun. Water Dist.,*
 272 S.W.3d 699 (Tex. App. 2008) .......................................................................6

*Cooper Tire & Rubber Co. v. Farese,*
 423 F.3d 446 (5th Cir. 2005) ................................................................................5

*DIRECTV, Inc. v. Robson,*
 420 F.3d 532 (5th Cir. 2005) ................................................................................5

*Ehleiter v. Grapetree Shores, Inc.,*
 482 F.3d 207 (3d Cir. 2007) ................................................................................8

*First City Nat'l Bank of Midland v. Concord Oil Co.,*
    808 S.W.2d 133 (Tex. App 1991) ......................................................................................... 6

*Forby v. One Technologies, LP,*
    909 F.3d 780 (5th Cir. 2018) ........................................................................................ 1, 7

*Hampton v. Equity Trust Co.,*
    736 Fed. App'x. 430 (5th Cir. 2018) ....................................................................... 8, 9, 10

*Haynsworth v. The Corp.,*
    121 F.3d 956 (5th Cir. 1997) .............................................................................................. 8

*Hoffmann-La Roche Inc. v. Sperling,*
    493 U.S. 165 (1989) ......................................................................................................... 11

*In re ADM Inv'r Servs., Inc.,*
    304 S.W.3d 371 (Tex. 2010) ............................................................................................. 9

*In re Chinese-Manufactured Drywall Products Liabilty Litig.,*
    794 Fed. App'x. 387 (5th Cir. 2019) .................................................................................. 8

*In re Mirant Corp.,*
    613 F.3d 584 (5th Cir. 2010) ................................................................................... 7, 9, 10

*International Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.,*
    999 F.3d 257 (5th Cir. 2021) ............................................................................... 7, 8, 9, 10

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,*
    379 F.3d 293 (5th Cir. 2004) ............................................................................................. 5

*Killion v. KeHe Distribs.,*
    885 F.Supp.2d 874 (N.D. Ohio 2012) ............................................................................... 7

*Lapides v. Board of Regents of Univ. Sys. of Georgia,*
    535 US 613 (2002) ............................................................................................................. 9

*Levy v. Schlumberger Tech. Corp.,*
    Civ. A. No. 6:16-cv-00043, 2016 WL 6885916 (W.D. La. Nov. 2, 2016) ................... 7, 10

*Lincoln Gen. Ins. Co. v. Reyna,*
    401 F.3d 347 (5th Cir. 2005) ............................................................................................. 5

*Mazurkiewics v. Clayton Homes, Inc.,*
    971 F.Supp.2d 682 (S.D. Tex. 2013) ................................................................................ 7

*Nicholas v. KBR, Inc.,*
    565 F.3d 904 (5th Cir. 2009) ................................................................................... 7, 9, 10

*North Am. Specialty Ins. Co. v. Debis Fin. Servs. Inc.,*
  513 F.3d 466 (5th Cir. 2007) ...................................................................8

*Ogden v. Dickinson State Bank,*
  662 S.W.2d 330 (Tex.1983) .....................................................................6

*Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.,*
  308 F.3d 451 (5th Cir. 2002) ...................................................................5

*Reeves v. Sanderson Plumbing Prods., Inc.,*
  530 U.S. 133 (2000) ................................................................................5

*Republic Ins. Co. v. PAICO Receivables, LLC,*
  383 F.3d 341 (5th Cir. 2004) ...........................................................7, 8, 9

*Reyna v. Int'l Bank of Commerce,*
  839 F.3d 373 (5th Cir. 2016) ...................................................................7

*Roussell v. Brinker Int'l, Inc.,*
  2008 WL 2714079 (S.D.Tex.2008) ........................................................11

*Salzstein v. Berkins Van Lines, Inc.,*
  993 F.2d 1187 (5th Cir. 1993) .................................................................8

*SGIC Strategic Global Investment Capital, Inc. v. Burger King Europe GmbH,*
  839 F.3d 422 (5th Cir. 2016) ...........................................................5, 7, 8

*Simmons & Simmons Constr. Co. v. Rea,*
  155 Tex. 353, 286 S.W.2d 415 (Tex. 1955) ...........................................3

*Subway Equip. Leasing Corp. v. Forte,*
  169 F.3d 324 (5th Cir. 1999) ........................................................6, 7, 8, 9

*Vine v. PLS Fin. Servs., Inc.,*
  689 Fed. App'x 800 (5th Cir. 2017) ....................................................7, 8

*Walker v. Honghua America, LLC,*
  870 F.Supp.2d 462 (S.D. Tex. 2012) ....................................................11

*Walker v. J.C. Bradford & Co.,*
  938 F.2d 575 (5th Cir. 1991) ..............................................................7, 8

*Wellogix, Inc. v. SAP Am., Inc.,*
  648 Fed. App'x. 398 (5th Cir. 2016) ...................................................8, 9

*Williams v. Cigna Fin. Advisors, Inc.,*
  56 F.3d 656 (5th Cir. 1995) .....................................................................9

*Wright v. Hernandez,*
  469 S.W.3d 744 (Tex. App. 2015) ................................................................................3

Rules

Fed. R. Civ. P. 56(a) ................................................................................................5

## 1.  SUMMARY.

STC says some opt-in plaintiffs must be dismissed because—6+ years ago—they signed severance agreements waiving their right to participate in an FLSA collective action.[1] STC is wrong.

First, according to STC, opt-in plaintiff James Davis only agreed to waive participation in collective actions conditionally certified **after** the date he executed his severance agreement, February 10, 2015—the Court conditionally certified this matter on February 5, 2015, before he executed the agreement. Doc. 546-1 at PageID# 9865 (STC claims Davis agreed to "waive[ ] participation, to the extent permitted by law, in any class or collective action…by signing this [Waiver and Release] prior to the conditional certification of a class or collective action.") *cf.* Docs. 49-50; Exhibit 1, Transcript of Conditional Certification Hearing at 33:23-34:20 (granting conditional certification and adding: "Oh, by the way, I'll – my order is effective as of today [February 5, 2015].""). Thus, by its own terms, the severance agreement STC seeks to enforce against Davis does not apply because this Court granted conditional certification before Davis executed it.

Further, STC waived any alleged right to seek dismissal based on severance agreements signed way back in 2015. STC substantially invoked the judicial process over the last six years and waited until the eleventh hour to seek dismissal. The opt-in plaintiffs at issue all joined this lawsuit in 2015. Docs. 42, 54, 67-69, 73, 77-78, 99, 141, 145. They executed the severance agreements between March 2013 and February 2015. Docs. 533-1–533-15, Doc. 546-4 at PageID# 9924, ¶ 8. Despite knowledge of these agreements, STC waited **at least** six years to try and prevent these plaintiffs from proceeding collectively. *See* Docs. 533, 546-1 at PageID# 9864-9871. And in the interim, STC aggressively litigated (including serving written discovery to and deposing certain opt-in plaintiffs). It's too late now.

STC waived any argument the severance agreements these workers signed preclude them from proceeding collectively in this case. *See Forby v. One Technologies, LP*, 909 F.3d 780, 783 (5th Cir. 2018) (a party waives the right to enforce a contractual right where it substantially invokes the judicial process

---

[1] Specifically, STC contends opt-in plaintiffs James Davis (Doc. 546 at PageID# 9864-9871), Jacob Binion, Jeana Eviston, Richard Graham, Thomas Lane, Albert Mager, Glenn Mansefield, Manual Morin, Jason Mueller, Glen Ramsey, Chris Richardson, David Scott, Darrell Smebakken, Robert Taylor, Jody Wallace, and Larry Weathers (Doc. 533) must be dismissed.

and causes prejudice to the other party) (citing *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 421 (5th Cir. 2014)). Not only did STC fail to timely raise the issue but dismissing these workers' claims would also cause substantial prejudice to everyone involved and would waste judicial resources. As set forth more fully below, the Court should deny STC's motions.

## 2.  BACKGROUND.

Plaintiffs filed this case seven years ago alleging, in part, STC misclassified its directional drillers as exempt employees. *See* Doc. 1. On February 5, 2015, the Court granted conditional certification of a Putative Class including STC directional drillers.[2] Docs. 49-50; Ex. 1 at 33:23-34:20. Nearly 300 workers joined this case as opt-in plaintiffs and almost 600 docket entries have been entered. Exhibit 2, Summary of Docket Entries.

STC now contends certain opt-in plaintiffs must be dismissed based on separation agreements they entered in 2015. *See* Docs. 533, 546-1 at PageID# 9864-9871. STC claims these workers "signed severance agreements which included a provision whereby they waived their right to participate in any class or collective action against STC arising out of their employment with STC." Doc. 533 at PageID# 7725; Doc. 546-1 at PageID#9859. These workers all joined this lawsuit in 2015. Docs. 42, 54, 67-69, 73, 77-78, 99, 141, 145. They also all executed the applicable severance agreements at least six years ago. Docs. 533-1–533-15, Doc. 546-4 at PageID# 9924, ¶ 8. Specifically:

| Opt-in Plaintiff | Date Opted-in | Date Severance Agreement Executed |
|---|---|---|
| Davis, James | 1/23/2015 (Doc. 42) | 2/10/2015 (Doc. 546-4 at PageID# 9924, ¶ 8) |
| Binion, Jacob | 4/16/2015 (Doc. 67) | 02/03/2015 (Doc. 533-1) |
| Eviston, Jeana | 10/12/2015 (Doc. 141) | 04/04/2013 (Doc. 533-2) |
| Graham, Richard | 4/20/2015 (Doc. 69) | 01/16/2015 (Doc. 533-3) |
| Lane, Thomas | 5/4/2015 (Doc. 78) | 01/16/2015 (Doc. 533-4) |
| Mager, Albert | 5/21/2015 (Doc. 99) | 01/16/2015 (Doc. 533-5) |
| Mansfield, Glenn | 4/16/2015 (Doc. 67) | 03/26/2013 (Doc. 533-6) |
| Morin, Manuel | 10/21/2015 (Doc. 145) | 03/27/2013 (Doc. 533-7) |
| Mueller, Jason | 4/16/2015 (Doc. 67) | 02/13/2014 (Doc. 533-8) |

---

[2] On February 25, 2015, the Court issued a more detailed written order memorializing its February 5, 2015, grant of conditional certification. *See* Doc. 52.

| Ramsey, Glen | 4/17/2015 (Doc. 68) | 02/14/2014 (Doc. 533-9) |
| Richardson, Chris | 3/4/2015 (Doc. 54) | 02/02/2015 (Doc. 533-10) |
| Scott, David | 5/1/2015 (Doc. 77) | 01/22/2015 (Doc. 533-11) |
| Smebakken, Darrell | 5/4/2015 (Doc. 78) | 01/21/2015 (Doc. 533-12) |
| Taylor, Robert | 4/16/2015 (Doc. 67) | 01/16/2015 (Doc. 533-13)[3] |
| Wallace, Jody | 4/27/2015 (Doc. 73) | 01/16/2015 (Doc. 533-14) |
| Weathers, Larry | 4/27/2015 (Doc. 73) | 02/13/2014 (Doc. 533-15) |

In its memorandum in support of its motion for summary judgment as to James Davis, STC argues Davis expressly agreed only to waive participation in a collective action which had not yet been conditionally certified:

> Davis Depo. at p. 12; Ex. 2, Marroquin Decl. at ¶ 9 & attached ex. 2-3.) The Agreement provides that while it was "not intended to release any claims, such as FLSA claims, that the employee is not free to release on his own accord," Davis did "waive[ ] participation, to the extent permitted by law, in any class or collective action, as either a class or collective action representative or participant as to those claims not released, by signing this [Waiver and Release] prior to the conditional certification of a class or collective action." (Ex. 2, Marroquin Decl. at ¶ 7 & attached ex. 2-2.)

Doc. 546-1 at PageID# 9865. Based on STC's own admissions, Davis is not precluded from participating in this collective action. *Id.* Davis filed a consent to join this case on January 23, 2015. Doc. 42. He did not execute the severance agreement until February 10, 2015—five days **after** the Court conditionally certified this matter. Doc. 546-4 at PageID# 9924, ¶ 8; Docs. 49-50.

Outside of Davis, the other opt-in plaintiffs are alleged to have agreed that:

> If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Company is a party.

---

[3] The severance agreement STC submitted for opt-in plaintiff Robert Taylor is devoid of any signature page evidencing Taylor agreed to the terms of the severance agreement. *See* Doc. 133-13. Where, as here, the terms of the agreement are clear a signature is required, a party's failure to sign the agreement renders the entire agreement unenforceable. *Wright v. Hernandez*, 469 S.W.3d 744, 758 (Tex. App. 2015) (citing *Simmons & Simmons Constr. Co. v. Rea*, 155 Tex. 353, 286 S.W.2d 415, 418-19 (Tex. 1955)).

*See* Docs. 533-1–533-15. All the opt-in plaintiffs at issue executed their severance agreements between March 2013 and February 2015. *Id.*; Doc. 546-4 at PageID# 9924, ¶ 8. STC knew about the existence of these severance agreements at the time they were executed. Indeed, STC told the Court back in 2014 it would seek relief with respect to certain plaintiffs it claimed waived their procedural right to participate in a collective action. *See, e.g.*, Doc. 10 at PageID# 51, at Affirmative Defense No. 18 ("Some or all of Plaintiffs' claims and/or the putative class' claims are barred by the doctrines of waiver[.]"); Doc. 29 at PageID#153, at Affirmative Defense No. 18 (same); Doc. 371 at PageID# 4863-4865 (STC again tells the Court, in 2018, that it will seek to enforce the waiver and release language found in the severance agreements).

Despite having the severance agreements for over half a decade, STC never moved to enforce them (if it could). Instead, STC aggressively litigated issues unrelated to the enforceability of those agreements **and even obtained discovery** from many of the opt-in plaintiffs it now seeks to dismiss. *See, e.g.*, Ex. 2 (showing over 500 docket entries since February 2015 when the last severance agreement was executed); Docs. 156, 167 (STC fought to prevent an opt-in plaintiff from withdrawing from the case); Docs. 182, 185, 188 (STC tried to unilaterally choose the 89 opt-in plaintiffs subject to representative discovery); Docs. 244, 267 (STC sought summary judgment on the claims of 16 opt-in plaintiffs on the basis they did not meet the class definition and/or their claims were barred by the statute of limitations); *see also* Exhibit 3, Opt-in Plaintiff Jacob Binion's Responses to STC's First Set of Written Discovery; Exhibit 4, Opt-in Plaintiff Jason Mueller's Responses to STC's First Set of Written Discovery; Exhibit 5, Opt-in Plaintiff Chris Richardson's Responses to STC's First Set of Written Discovery; Exhibit 6, STC's First Set of Written Discovery to Opt-in Plaintiff Darrell Smebakken and Responses; Exhibit 7, List of Selected Directional Drillers Chosen for Deposition (where STC specifically elected to depose opt-in plaintiff Chris Richardson and opt-in plaintiff David Scott was chosen via random selection); Exhibit 8, Transcript from the Oral Deposition of Opt-in Plaintiff David Scott taken on August 16, 2018); Exhibit 9, Transcript from the Oral Deposition of Opt-in Plaintiff James Davis taken on September 21, 2018; Exhibit 10, STC'S Notice of Deposition of Opt-in Plaintiff Chris Richardson.

3.  STANDARD OF REVIEW.

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact" such that it "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine [dispute] of material fact." *Lincoln Gen. Ins. Co. v. Reyna,* 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25 (1986)). A dispute "is material if its resolution could affect the outcome of the action." *DIRECTV, Inc. v. Robson,* 420 F.3d 532, 536 (5th Cir. 2005).

To survive summary judgment, the non-movant need only identify evidence in the record and articulate the way that evidence supports its claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). The Court must draw all reasonable inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Indeed, the Court must construe all facts in favor of the non-moving party and must indulge all inferences favorable to the non-moving party. *Barrientos v. City of Eagle Pass, Texas*, 444 Fed. App'x. 756, 758 (5th Cir. 2011); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 455-56 (5th Cir. 2005). Courts "may not make credibility determinations or weigh the evidence[.]" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

Where the burden of proof at trial lies with the non-moving party, the movant satisfies its initial summary judgment burden only by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response." *Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.,* 308 F.3d 451, 471 (5th Cir. 2002). Even if the movant meets its initial burden, the non-movant survives summary judgment by simply identifying specific evidence in the record and articulating the way such evidence supports that party's claim. *Johnson,* 379 F.3d at 301.

The Fifth Circuit reviews the "waiver of a contractual right de novo and the factual findings underlying the district court's waiver determination for clear error." *SGIC Strategic Global Investment*

*Capital, Inc. v. Burger King Europe GmbH*, 839 F.3d 422, 426 (5th Cir. 2016); *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999)

### 4. DAVIS IS NOT PROHIBITED FROM PARTICIPATING IN THIS COLLECTIVE ACTION.

STC claims opt-in plaintiff Davis cannot participate in this collective action based on a severance agreement he signed on February 10, 2015. *See* Doc. 546 at PageID# 9864-9871. But STC expressly admits Davis agreed only to waive participation in a collective action which had not yet been conditionally certified:

> "[W]aive[ ] participation, to the extent permitted by law, in any class or collective action, as either a class or collective action representative or participant as to those claims not released, by signing this [Waiver and Release] ***prior to*** **the conditional certification of a class or collective action.**"

Doc. 546-1 at PageID# 9865 (emphasis added).

Davis joined this case as an opt-in plaintiff on January 23, 2015. Doc. 42. On February 5, 2015, the Court granted Plaintiffs' motion for conditional certification. Docs. 49-50; Ex. 1 at 33:23-34:20 ("Oh, by the way, I'll – my order is effective as of today [February 5, 2015]. I will add written reasons when I can get them out of here, but I don't want to wait to actually make the ruling, so the motion is granted in the way that I have just characterized it."). Davis didn't sign the severance agreement until February 10, 2015—five days after the Court conditionally certified this collective action. *See* Doc. 546-1 at PageID# 9865; Doc. 546-4 at PageID# 9924, ¶ 8. Thus, even under STC's version of events and without considering STC's waiver, the plain language of the agreement[4] does not preclude Davis from participating in this case. Davis signed the agreement **after** the Court granted conditional certification, not before. *Id.*; Doc. 49-50; Ex. 1 at 33:23-34:20. Schlumberger's motion therefore fails.

---

[4] Under Texas law, courts must construe contracts in accordance with their plain language. *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex.1983). The Court must give all terms their plain, ordinary, and generally accepted meaning unless the contract shows the parties used them in a technical or different sense. *City of the Colony v. North Texas Mun. Water Dist.*, 272 S.W.3d 699, 722 (Tex. App. 2008). If a contract is worded so that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968); *First City Nat'l Bank of Midland v. Concord Oil Co.*, 808 S.W.2d 133, 137 (Tex. App 1991).

### 5.  STC WAIVED THE RIGHT TO ENFORCE THE RELEASES.

Everyone agrees workers cannot waive their right to bring an FLSA claim seeking to recover overtime pay. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740 (1981) ("an individual employee's right to a minimum wage and to overtime pay... cannot be abridged by contract or otherwise waived"); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945); *Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 163 (5th Cir. 2015) ("the Supreme Court has concluded that the FLSA forbids waiver of the right to statutory wages or to liquidated damages."). While a worker can contractually waive his right to proceed collectively, *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 298 (5th Cir. 2004), such waivers (like all contract rights) are themselves subject to waiver. *See Forby*, 909 F.3d at 783.

Sitting on the alleged right to exclude participants from collective actions is not favored. Whether "plaintiffs waived [their] right to participate in a collective action or to act as a collective class representative is a threshold issue that should be resolved early in the litigation." *Levy v. Schlumberger Tech. Corp.*, Civ. A. No. 6:16-cv-00043, 2016 WL 6885916, at *5 (W.D. La. Nov. 2, 2016) (Hanna, M.J.), *adopted* 2016 WL 6888129 (Drell, C.J.) (citing *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373 (5th Cir. 2016)). It is thus not surprising a party may waive their ability to enforce a contractual right if it: (1) substantially invokes the judicial process, and (2) thereby causes detriment or prejudice to the other party. *Forby*, 909 F.3d at 783.

Courts routinely hold a party waives the right to enforce an agreement to arbitrate by substantially invoking the judicial process. *See International Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 999 F.3d 257 (5th Cir. 2021); *Forby*, 909 F.3d 780; *SGIC Strategic Global Investment Capital, Inc. v. Burger King Europe GmbH*, 839 F.3d 422 (5th Cir. 2016); *In re Mirant Corp.*, 613 F.3d 584, 588 (5th Cir. 2010); *Subway*, 169 F.3d at 329; *Nicholas v. KBR, Inc.*, 565 F.3d 904, 910 (5th Cir. 2009); *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341 (5th Cir. 2004); *Vine v. PLS Fin. Servs., Inc.*, 689 Fed. App'x 800, 802–03 (5th Cir. 2017); *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991).

The enforceability of a collective waiver does not change outside of the arbitration context because arbitration agreements are on equal footing with other contracts. *See Mazurkiewics v. Clayton Homes, Inc.*, 971 F.Supp.2d 682, 692 (S.D. Tex. 2013) (Costa, J.) (citing *Killion v. KeHe Distribs.*, 885

F.Supp.2d 874, 882-83 (N.D. Ohio 2012)). Litigation conduct waiver applies to a variety of contractual disputes outside the arbitration context, including in the forum selection context. *See Hampton v. Equity Trust Co.*, 736 Fed. App'x. 430, 436 (5th Cir. 2018) (party waived forum selection clause by substantially invoking the judicial process in investor's suit); *Haynsworth v. The Corp.*, 121 F.3d 956, 964 (5th Cir. 1997) (like class/collective waivers, arbitration clauses are merely a specialized subset of the larger group of forum selection clauses); *see also In re Chinese-Manufactured Drywall Products Liabilty Litig.*, 794 Fed. App'x. 387 (5th Cir. 2019) (party waived the right to appeal by executing new agreement); *North Am. Specialty Ins. Co. v. Debis Fin. Servs. Inc.*, 513 F.3d 466, 470 (5th Cir. 2007) (party waived the defense of unseaworthiness in a breach of warranty claim by failing to timely issue a reservation-of-rights letter and thus acted in a manner inconsistent with the intent to enforce its contractual rights). The Court should analyze waiver of a collective action release the same as any other forum selection clause. *Id.*

A.      **Waiver Based on Litigation Conduct.**

Waiver occurs "if a party engages in 'conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.'" *SGIC Strategic Global Investment Capital, Inc. v. Burger King Europe GmbH*, 839 F.3d 422, 426 (5th Cir. 2016) (quoting *N. Am. Specialty Ins. Co.*, 513 F.3d at 470). Litigation-conduct waivers implicate the court's authority to control judicial procedures or to resolve the issues arising from the judicial conduct. *Vine*, 689 Fed. App'x. at 803 (citing *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 219 (3d Cir. 2007)). A party waives its right to enforce a contractual provision if it overtly demonstrates a desire to resolve the dispute through litigation. *Int'l Energy*, 999 F.3d at 266; *Subway*, 169 F.3d at 326; *Republic Ins. Co.*, 383 F.3d at 344.

Whether a party waived a contractual right based on litigation conduct is fact dependent. *Walker*, 938 F.2d at 576. An affirmative waiver can occur when a party voluntarily and intentionally surrenders a known contractual right. *Hampton*, 736 Fed. App'x at 435; *C&C Investment Properties, LLC v. Trustmark Nat'l Bank*, 838 F.3d 655, 659 (5th Cir. 2016) (citing *Salzstein v. Berkins Van Lines, Inc.*, 993 F.2d 1187, 1191 (5th Cir. 1993)); *Wellogix, Inc. v. SAP Am., Inc.*, 648 Fed. App'x. 398, 401-02 (5th Cir. 2016). "Waiver can also occur if a party engages in conduct so inconsistent with the intent to enforce the [contractual] right as to induce a reasonable belief that it has been relinquished." *Hampton*, 736

Fed. App'x at 435; *Int'l Energy*, 999 F.3d at 266. Under this approach, the party seeking to enforce a contractual right waives it if it: (1) substantially invokes the judicial process in derogations of the [] clause and (2) thereby causes detriment to the other party. *Hampton*, 736 Fed. App'x at 435 (citing *Wellogix*, 648 Fed. App'x at 402 and *In re ADM Inv'r Servs., Inc.*, 304 S.W.3d 371, 374 (Tex. 2010)).

"To invoke the judicial process, a 'party must, at the very least, engage in some overt act in court that evinces a desire to resolve the…dispute through litigation....'" *Id.* (quoting *Mirant*, 613 F.3d at 589 and *Subway*, 169 F.3d at 329). **Litigation on the merits can substantially invoke the judicial process.** *Id.* ("By seeking to prove its own allegations to the district court, [appellant] invoked the judicial process to a greater degree than it would have by filing a mere 'perfunctory motion to dismiss.'" (quoting *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661 (5th Cir. 1995)). The Court must focus on the litigation act(s) the party took (or neglected to take) which create the waiver. *See Lapides v. Board of Regents of Univ. Sys. of Georgia*, 535 US 613, 620 (2002). Indeed, where a party engages in conduct inconsistent with their alleged right, including by "ignoring readily available mechanisms for invoking the [waiver] clause, deposing [plaintiffs], completing discovery, and delaying [for] years" and by filing motions for summary judgment on other issues without addressing the right they now seek to enforce, they "evince a desire to resolve the…dispute through litigation." *Hampton*, 736 Fed. App'x at 436.

## B.      Prejudice to the Opposing Party.

Whether a party has been prejudiced is a "fact-dependent inquiry" that asks if the party suffered "delay, expense, or damage to [its] legal position" because of an opposing party's submission to or pursuit of litigation. *See Int'l Energy*, 999 F.3d at 267; *Mirant*, 613 F.3d at 591; *Nicholas*, 565 F.3d at 910; *Republic Ins. Co.*, 383 F.3d at 346 (5th Cir. 2004). A party's failure to assert its contractual right in a timely manner is relevant to the prejudice determination. *Int'l Energy*, 999 F.3d at 267 (the Fifth Circuit finds "delays of 10 and 18 months to be sufficiently troubling") (citing cases). "Delay coupled with extensive pretrial litigation is even more problematic because of the 'inherent unfairness' that occurs when a party 'forces its opponent to litigate a dispute' and "later seeks to [dismiss] it." *Id.* (internal citations omitted). The Fifth Circuit has found "[a] party cannot keep its right to [enforce a contractual provision] in reserve indefinitely while it pursues a decision on the merits before the district

9

court" and allowing it to do so "at the eleventh hour…would obviously damage [the opposing party's] legal position" and waste resources. *Hampton*, 736 Fed. App'x at 436-37(citing *Mirant*, 613 F.3d at 591).

As with delay, "there is no magic number as to how much expense is enough to show prejudice." *Int'l Energy*, 999 F.3d at 267. "[A] party claiming prejudice need not submit a number at all." *Id.* (citing *Nicholas*, 565 F.3d at 910-11). Instead, the opposing party need only show it was "forced…to expend substantial amounts of time and money" litigating its claims. *Id.* at 268.

C.    **STC Substantially Invoked the Judicial Process and Prejudiced Plaintiffs.**

There is no question STC waived its right to enforce any waiver contained in the opt-in plaintiffs' respective severance agreements by substantially invoking the judicial process. Again, Plaintiffs filed this case **seven years ago**. Doc. 1. The opt-in plaintiffs at issue all joined this case in **2015**. Docs. 42, 54, 67-69, 73, 77-78, 99, 141, 145. They executed the severance agreements between March 2013 and February 2015. Docs. 533-1–533-15; Doc. 546-4 at PageID# 9924, ¶ 8. STC knew about the severance agreements as early as 2013, told the Court as early as 2014 it intended to do something about this alleged waiver of the right to participate in a collective action, but then proceeded to do nothing other than litigate this case like crazy. *See, e.g.*, Ex. 2; Doc. 10 at PageID# 51, at Affirmative Defense No. 18 ("Some or all of Plaintiffs' claims and/or the putative class' claims are barred by the doctrines of waiver[.]"); Doc. 29 at PageID#153, at Affirmative Defense No. 18 (same); Doc. 371 at PageID# 4863-4865 (STC told the Court in 2018 it would seek to enforce the waiver and release language found in the severance agreements but waited nearly three years to do so).

STC actively engaged in litigation conduct inconsistent with its right to seek to enforce the alleged waivers by: (1) ignoring readily available mechanisms to enforce the clauses (e.g., by filing a motion to dismiss or seeking summary judgment early in the litigation); (2) seeking to complete discovery of nearly 90 plaintiffs and conducting extensive discovery concerning the merits of its claims and defenses, including discovery from numerous opt-in plaintiffs it now seeks to dismiss (*see* Exs. 3-10); and (3) affirmatively moving for summary judgment on other issues without addressing the severance agreements it now seeks to enforce (Docs. 244, 267). *See Hampton*, 736 Fed. App'x at 436; *Levy*, 2016 WL 6885916, at *5 (whether "plaintiffs waived [their] right to participate in a collective

action or to act as a collective class representative is a threshold issue that should be resolved early in the litigation."). In fact, a summary of the docket shows STC aggressively litigated this matter in all respects. *See* Ex. 2 (summary of extensive docket entries). It wasn't until May 14, 2021, that STC tried to actually do something about it alleged contractual right to keep these opt-in plaintiffs out of this case. *See* Docs. 533, 546.

STC's failure to timely assert its contractual waiver claims prejudiced Plaintiffs (and the opt-in plaintiffs). STC subjected numerous opt-in plaintiffs whom they now seek to dismiss to costly written discovery and depositions. *See, e.g.*, Exs. 3-10. Moreover, Plaintiffs had to move for summary judgment on STC's unsupported claims certain opt-in plaintiffs waived their right to proceed collectively by virtue of executing a severance agreement. *See* Doc. 343. STC's considerable delay forced Plaintiffs to litigate these workers' claims and STC's affirmative defense of waiver and release when these issues easily could have (and should have) been resolved **years ago** but for STC's delay.

## 6.  JUDICIAL ECONOMY FAVORS DENYING STC'S MOTIONS.

An FLSA collective action is an effective mechanism for resolving common issues in one consolidated action and promoted judicial efficiency. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Walker v. Honghua America, LLC*, 870 F.Supp.2d 462, 465 (S.D. Tex. 2012). The "remedial nature of the FLSA and the purposes of Section 216 militate strongly in favor of allowing cases to proceed collectively." *Roussell v. Brinker Int'l, Inc.*, 2008 WL 2714079, *24 (S.D.Tex.2008) (and cases cited therein).

The Court has an interest in keeping the opt-in plaintiffs' claims in this Action. These opt-in plaintiffs have been involved in this litigation for over six years and many have actively participated in merits-based discovery relating to their claims against STC. *See* Exs. 3-10. This Court has considerable knowledge of the facts of this case. If these opt-in plaintiffs are dismissed, they will be forced to re-file their individual cases against STC separately. Doing so will not only prejudice them by further delaying the resolution of their claims (which, again, have been on file since 2015), but would unnecessarily weigh down the judicial system and duplicate the efforts already put forth in this case.

7.   CONCLUSION.

For the reasons set forth herein, the Court should deny STC's motions for summary judgment

concerning severance (Docs. 533, Doc. 546 at PageID# 9864-9871).

Respectfully submitted,

By: */s/ Michael A. Josephson*
Michael A. Josephson
Texas Bar No. 24014780
Andrew W. Dunlap
Texas Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Ste. 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

and

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

and

Kenneth W. DeJean
Louisiana Bar Roll No. 4817
**Law Offices of Kenneth DeJean**
417 W. University Avenue
P.O. Box 4325
Lafayette, Louisiana 70502
Tel: (337) 235-5294
Fax: (337) 235-1095
kwdejean@kwdejean.com

**Attorneys for Plaintiff**

12

**CERTIFICATE OF SERVICE**

On July 9, 2021, I served a copy of this document on all registered parties and/or their counsel of record, via the Court's CM/ECF system.

/s/ Michael A. Josephson

Michael A. Josephson