**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| BROCK BOUDREAUX, *et al.*, | Case No: 6:14-cv-02267-RRS-CBW |
| v. | District Judge Summerhays |
| SCHLUMBERGER TECH CORP. | Magistrate Judge Whitehurst |

**EATON'S RESPONSE TO STC'S MOTION FOR SUMMARY JUDGMENT**

**1. INTRODUCTION**

STC moved for summary judgment as to Joshua Eaton's Fair Labor Standards Act (FLSA) claim, arguing that—as a matter of law—Eaton is exempt from the FLSA's overtime requirements under the Highly Compensated Employee (HCE) test. 29 C.F.R. § 541.601. Because STC did not pay Eaton on a "salary basis" and/or because STC cannot carry its burden of proving there is no question of fact with respect to whether Eaton meets the HCE's duties tests, STC's motion must be denied.

**2. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). Further, a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir. 1995). That is because the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *Johnson v. Md. Dept. of Labor, Licensing, and Reg.*, 386 F.Supp.3d 608, 613 (D. Md. 2019).

The moving party invariably bears both the initial and the ultimate burden of demonstrating its legal entitlement to summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). And "the moving party cannot prevail on its motion for summary judgment if *any essential element* of its claim or defense requires trial." *Lopez v. Corporacion Azucarera de Puerto Rico*, 938 F.2d 1510, 1516 (1st Cir. 1991) (emphasis in original).

Importantly, the analysis to be applied on a motion for summary judgment differs depending on whether the moving party is also the party with the burden of proof at trial. If the moving party will bear the burden of proof at trial, the movant must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 331 (1986). If the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir. 2006).

Conversely, if the non-movant bears the burden of proof at trial, the non-movant must point to specific evidence establishing a genuine issue of material fact as to each challenged element. *Stable v. Novartis Pharmaceutical Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thus, the non-movant must put forth competent summary judgment evidence setting forth specific facts establishing a genuine issue of material fact. *Transamerica Ins. Co. v. Avennell*, 66 F.3d 715, 718-19 (5th Cir. 1995).

**3. ARGUMENTS AND AUTHORITIES**

**A. STC Must Prove Any Exemptions as Affirmative Defenses.**

STC claims Eaton is exempt under the FLSA's Highly Compensated Employee Test (29 C.F.R. § 541.601) because he earned total compensation in excess of $100,000 per year and performed one or more of the requirements for the Executive and/or Administrative Exemptions (29 C.F.R. §§ 541.100, 541.200). *See* ECF No. 545. Exemptions are affirmative defenses, and the employer bears the burden of proving that an employee is exempt from overtime payments. 29 U.S.C. § 213(a); *Miller v. Travis Cty., Texas*, 953 F.3d 817, 820 (5th Cir. 2020) ("The employer bears the burden of proving [an] exemption by a preponderance of the evidence.").

**B. Requirements for the Highly Compensated Employee Test**

An employee may be exempt under the HCE test if:

(1) He earns total annual compensation of at least $100,000;

(2) Total annual compensation includes at least $455 per week **paid on a salary basis**;

(3) He customarily and regularly performs any one of the exempt duties of an executive, administrative, or professional employee; and,

(4) He primarily performs office or non-manual work.

29 C.F.R. § 541.601 (emphasis added); *Smith v. Ochsner Health System*, 956 F.3d 681, 684 (5th Cir. 2020).

**C. Background of the Highly Compensated Employee Test**

By way of background, the highly compensated employee exemption is not a stand-alone exemption. Congress granted the Department of Labor authority to "define and delimit" exemptions for employees "employed in a bona fide executive, administrative, or professional capacity[,]" but did not create or authorize a "highly compensated exemption." *See* 29 U.S.C. § 213(a)(1). Rather, the test for "highly compensated employees" is merely "a less burdensome way to

prove an executive, administrative, or professional exemption, not a separate exemption." *Coates v. Dassault Falcon Jet Corp.,* 961 F.3d 1039, 1042 n.2 (8th Cir. 2020); *See cf. Smith v. Ochsner Health Sys.,* 956 F.3d 681, 685 (5th Cir. 2020) (describing administrative, executive, and professional exemptions as "standalone" exemptions" in contrast with the highly compensated employee exemption); *Allen v. Priority Energy Servs., LLC*, No. 7:16-CV-47-DAE, 2017 WL 11037104, at *13 (W.D. Tex. Sept. 1, 2017) (same). The HCE test relaxes the duties test the employer must meet to show an employee is exempt from the FLSA's overtime requirements (as an executive, administrative or professional employee) if the employee earns above a certain threshold of compensation. The highly compensated employee exemption does not relax the salary/fee basis test—it strengthens it.[1]

Explicit in the regulation, the employer must pay the exempt highly compensated employee "at least $684 per week paid on a salary o fee[2] basis as set forth in §§ 541.602 and 541.605." 29 C.F.R. § 541.601(b)(1) ("Highly compensated employees"). The highly compensated employee regulation could just as easily have excluded highly compensated employees from the salary basis requirement, as the regulation for outside sales employees provides,[3] but instead is contained *within* subpart G ("Salary Requirements") and explicitly requires compliance with § 541.602 ("Salary Basis").

Furthermore, the test for highly compensated employees incorporates and strengthens the salary requirements applicable to the executive, administrative and professional employee

---

[1] At 29 C.F.R. 541.601(b)(1) ("Highly compensated employees"), the regulation states that "§ 541.602(a)(3) shall not apply to highly compensated employees." 29 C.F.R. § 541.602(a)(3) ("Salary basis.") provides that up to ten percent of the salary required by § 541.600(a) may be satisfied by other types of pay such as bonuses commissions or incentives. In other words, the highly compensated employee must earn $684 per week in the form of salary.
[2] STC does not contend that Plaintiffs were paid on a "fee basis," and so Plaintiffs will provide no further reference to payment on a fee basis.
[3] 29 C.F.R. § 541.500(c) ("The requirements of subpart G (salary requirements [§§ 541.600-.607]) of this part do not apply to the outside sales employees described in this section.").

exemptions, which exemptions require compliance with 29 C.F.R. §§ 541.600 ("Amount of salary required") and 541.604 ("Minimum guarantee plus extras."). To hold otherwise would render the "Minimum guarantee plus extras" language mere surplusage in violation of relevant canons of interpretation. *See Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 668-69 (2007) (invoking the canon against surplusage in interpretation of regulation). Similarly, to hold that the highly compensated employee exemption only requires compliance with §§ 541.602 ("Salary basis.") and 541.605 ("Fee basis.") of subpart G ("Salary Requirements") would lead to the absurd result that § 541.603 ("Effect of improper deductions from salary.") would not apply to the highly compensated employee. All provisions of subpart G apply with equal force to the highly compensated employee test located in that subpart.

### D. STC Cannot Prove it Paid Eaton on a Salary Basis Under the HCE Test

#### 1) Payment of a Salary "Plus Extras" Invokes 29 C.F.R. § 541.604.

While section 541.602 is the "general rule" for payment to qualify as a "salary," § 541.604(a) and 604(b) explain how this general rule applies in the rare circumstance—applicable here—where an employee is paid a base salary "plus extras." *See Coates v. Dassault Falcon Jet Corp.*, 961 F.3d 1039, 1042–43 (8th Cir. 2020). Sections 541.604(a) and 604(b) are similar in that they only apply "if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis." 29 C.F.R. §§ 541.604(a); 604(b). Both subsections use identical language. *Id.*

Sections 541.604(a) and § 541.604(b) differ in how to treat different types of "extras" paid in addition to the base salary. Section 604(a) allows additional non-time-based pay (e.g., commissions) and pay for hours worked "beyond the normal workweek" (i.e., for hours above 40 in a workweek) without requiring a reasonable relationship between the salary and the total compensation. See 29 C.F.R. § 541.604(a) (allowing compensation in addition to salary for "commissions on sales," "a

5

percentage of the sales or profits," or additional pay paid "on any basis" for hours worked "<u>beyond</u> the normal workweek.").

Section 541.604(b) applies only when a salaried employee's extra compensation (above and beyond their base salary) is based on time worked. As 29 C.F.R. § 541.604(b) explains: "The reasonable relationship requirement applies only if the employee's pay is computed on an hourly, daily or shift basis." 29 C.F.R. § 541.604(b). It does not apply if the extra compensation is paid on some other non-time basis (such as a percentage of store profits or commission). Section 541.604(b) specifically requires the employment arrangement include "a guarantee of at least the minimum weekly required amount paid on a salary basis" (i.e., a base salary) "that is paid regardless of the number of hours, days or shifts worked." 29 C.F.R. § 541.604(b).

Eaton was paid on a day rate basis plus a relatively modest "salary." Under the controlling regulations, his extra pay is time-based. 29 C.F.R. § 541.604(b). Thus, the question is "whether [his] guaranteed weekly salary … has a 'reasonable relationship' with [his] 'usual earnings' for the purposes of determining whether [he was] paid a salary[.] Opinion Letter Fair Labor Standards Act (FLSA), 2018 WL 5921453, at *1.

2) **STC Fails the "Reasonable Relationship" Test.**

While STC's pay plan included a salary above the regulatory minimum, that alone is not enough. STC's day-rate plus salary fails the "reasonable relationship" test required for a valid "salary basis" plan. Part of an exempt employee's compensation can be "computed on an hourly, a daily or a shift basis" if, but only if, "the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned." 29 C.F.R. § 541.604(b) (emphasis added). As the Department of Labor (DOL) explains:

6

> For example, if a manager whose actual compensation is determined on a shift or hourly basis usually earns $1,200 per week, the amount guaranteed must be roughly equivalent to $1,200; the employer could not guarantee such an employee only the $684 minimum salary level required. In any week in which the manager performed any work for the employer, the manager would receive at least the guaranteed amount of pay.

*See*, eLaws–FLSASecurity Advisor: https://webapps.dol.gov/elaws/whd/flsa/overtime/cr2.htm#5. In other words, the "guarantee" must bear a reasonable relationship to the amount the employees usually earn for a normally scheduled workweek. *Id.* This is to ensure the employee is really being paid "on a salary basis" (as opposed to hourly or by the day). "Just as dressing a mannequin up in a skirt and blouse does not transform it into a woman, so too masquerading an [day-rate] employee's compensation as a guaranteed salary [] does not transform the compensation scheme into a salary based plan." *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 183 (3d Cir. 1988).

### 3) Salary Basis Is Not Met Where Gross Weekly Earnings Exceed the Salary by 150%.

An employer can pay an employee 50% more than his alleged "salary" based on the time he works without violating reasonable relationship test. 29 C.F.R. § 541.604(b) (2016) ("for example, an exempt employee guaranteed compensation of at least $500 for any week in which the employee performs any work, and who normally works four or five shifts each week, may be paid $150 per shift without violating the salary basis requirement"). The DOL updated this example for the increased minimum salary amount effective January 1, 2020 and preserved the 1.5 (actual earnings) to 1 (salary) ratio. 29 C.F.R. § 541.604(b) (2020). For the 2020 example, the Department used $725 as the "salary" and $210 as the shift amount that could be paid to an employee "who normally works four or five shifts each week … without violating the $684-per-week salary basis requirement." *Id.* The total pay for a four-shift week in the updated example would be $840, which is 1.16 times the $725 salary. The total pay for a five-shift week would be $1,050, which is 1.45 times the $725 salary.

The DOL also explained why a highly compensated employee was not paid on a "salary basis" (and was therefore entitled to overtime) when his alleged salary was outweighed by his hourly earnings. DOL Opinion Letter FLSA 2018-25, 2018 WL 5921453 (Nov. 8, 2018). In that case, the highly compensated worker was paid $2,100/week in "salary" plus $70/hour for hours worked above 30 in a workweek. But given that the employee's normally scheduled workweek was approximately 54 hours, his "usual earnings" were "nearly 1.8-times--close to double--the guaranteed weekly salary" and "materially exceed[ed] the permissible [1.5-to-1] ratios found in the regulations[.]" *Id.* at *2

In other words, "a 1.5-to-1 ratio of actual earnings to guaranteed weekly salary is a 'reasonable relationship' under the regulations." 2018 WL 5921453, at *2; U.S. Dep't of Labor, Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122, 22184 (Apr. 23, 2004) ("if a nurse whose actual compensation is determined on a shift or hourly basis usually earns $1,200 per week, the amount guaranteed must be roughly equivalent to $1,200."). But Eaton's "salary plus day rate" pay plan resulted in salary to actual earnings ratios of 2.3 and higher.[4]

| Year | Salary | TOTAL COMPENSATION | RATIO |
|---|---|---|---|
| 2012 | $55,294.44 | $178,464.44 | 3.22752957 |
| 2013 | $59,619.54 | $153,614.54 | 2.57658043 |
| 2014 | $35,643.81 | $83,583.81 | 2.34497406 |

Thus, STC cannot meet the salary basis test as to Eaton and its Motion for Summary Judgment must be denied.

---

[4] This chart is a summary of payroll spreadsheets and documents produced by STC in this litigation.

E.  **STC Cannot Prove Eaton Performed Any of the Job Duties Requirements Under the Administrative Exemption.**

1) **The Administrative Exemption**

The Administrative Exemption (29 C.F.R. § 541.200) contains two job duties that can be established with the HCE test. STC must prove either that Eaton (1) customarily and regularly performed office or non-manual work directly related to the management or general business operations of STC or STC's customers; or (2) customarily and regularly performed duties including the exercise of discretion and independent judgment with respect to matters of significance. See 29 C.F.R. § 541.200. STC claims that Eaton meets the "directly related" duties prong of the Administrative Exemption. To do work directly related to the management or general business operations of the employer, "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a); DOL, Wage & Hr. Div., Adm'r Interp. No. 2010-1, at *2 (Mar. 24, 2010).[5]

2) **STC Cannot Prove Eaton Performed Job Duties Directly Related to the Management or General Business Operations of STC or its Customers**

The 'directly related" requirement of the administrative exemption is intended to limit the application of the administrative exemption "to those employees whose duties relate to the administrative as **distinguished from the production operations of a business**." 69 Fed. Reg. 22122, 22141 (Apr. 23, 2004) (quotations omitted) (emphasis added). Eaton's job duties – assisting with the drilling of oil and gas wells – are clearly production related. Eaton assists in drilling a well, thus producing the very product STC's clients are in the business of delivering. "[The administrative exemption] relates to employees whose work involves **servicing the business itself**[.]" *Id.*; *see also* DOL, Adm'r Interp. No. 2010-1, at *3 (Mar. 24, 2010) ("This production versus administrative

---

[5] https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/FLSAAI2010_1.pdf

9

dichotomy is intended to distinguish between work related to the goods and services which constitute the business' marketplace offerings and work which contributes to running the business itself.'" (quotations omitted)); *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 525 (2d Cir. 2009); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1230 (5th Cir. 1990); DOL Wage & Hr. Op. Letter No. FLSA2005-21 (Aug. 19, 2005) (same).

STC relies heavily on its argument that DDs, such as Eaton act as advisors and consultants to STC's clients on matters involved in directional drilling. To qualify for exemption, however, the employee must customarily and regularly provide advice directed to "matters that involve policy determinations, i.e., how a business should be run or run more efficiently, not merely providing information in the course of the customer's daily business operation*." See Dewan* 858 F.3d at 337; *Spangler v. Mourik, L.P.,* No. CV H-16-0349, 2017 WL 3412117, at *9 (S.D. Tex. Aug. 8, 2017) (same). Eaton at no time provided advice directed to matters that involve policy determinations. Any advice he provided was limited to how to keep the BHA on the path dictated by the well plan.

In enacting the 2004 regulations, the Department of Labor adopted an approach "consistent with" *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1127 (9th Cir. 2002)– with whose approach the DOL said the new 2004 regulations "is consistent," *(See DOL* Final Rule, 69 Fed.Reg. at 22141) Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 FR 22122-01. In *Bothell*, the Court of Appeals emphasized that the employees' work must relate to the employer's *general* business operations, and not simply *any* business operations. There, the court explained that this "requirement is met if the employee engages in running the business itself or determining its overall course or policies," but "**not just** in the day-to-day carrying out of the business' affairs." *Bothell*, 299 F.3d at 1125 (cleaned up, emphasis added, quotation and citation omitted); see also, *McKeen-Chaplin v. Provident Sav. Bank, FSB*, 862 F.3d 847 (9th Cir. 2017) (same) (reversing summary judgment and rendering judgment in plaintiffs'

10

favor). Thus, employees are not administratively exempt if their work involves their employer's day-to-day functioning but does not engage with the broader issues of the employer's "course or policies." Eaton's job duties were not involved in any way with STC's or its clients' "course or policies."

STC conflates activities engaged in producing the products generated by STC and its customers in their regular business operations (as Eaton did in his role as a Directional Driller) with making **business** decisions, e.g., how and when projects are completed, budgetary decisions, or staffing decisions. *Dewan* 858 F.3d at 337; *Spangler*, 2017 WL 3412117, at *9. But the Fifth Circuit made clear that the administrative exemption applies when the employee is involved with "administering the business affairs of the enterprise," not with "producing the commodity of the business." *Dewan,* 858 F.3d at 337. Put another way, Eaton's directional driller work "that is primarily functional rather than conceptual [and thus] does not meet the standard." *Id.* at 338.

The Fifth Circuit held that the "directly related" requirement "is not [focused] on a general concept of advice or consultancy but rather on policy determinations [for] **how a business should be run or run more efficiently**." *Id.* at 337 (emphasis added). The Ninth Circuit then confirmed the "directly related" requirement is met "if the employee engages in running the business itself or determining its overall course or policies, **not just in the day-to-day carrying out of the business' affairs**." *McKeen-Chaplin v. Provident Savings Bank, FSB*, 862 F.3d 847, 851 (9th Cir. 2017) (emphasis added) (reversing summary judgment against plaintiffs and rendering judgment in plaintiffs' favor).

Generally, the "directly related" standard requires an exempt employee to participate in important staff functions of the employer or the employer's clients or customers, which STC cannot show Eaton ever participated in, as opposed to the production function. *Id.* Indeed, as a directional driller, his work for STC (and its clients) was unambiguously centered on production: ensuring that the drilling function follows the well plan—not business operations decisions left to STC's upper

11

management and its clients. Thus, Eaton's work did not "contribute[] to running the business itself," as required to satisfy this element. DOL, Adm'r Interp. No. 2010-1, at *3; *see also* 69 Fed. Reg. 22122, 22141; *Dewan,* 858 F.3d at 337; *McKeen-Chaplin*, 862 F.3d at 851.

The nature of Eaton's work clearly makes him a line employee. He is out in the oilfield carrying out the strategies developed by others. The well plans he was required to follow are developed by others. He did not and could not prepare, create, or alter these well plans. His job was to merely help ensure that the well was drilled in conformity with that well plan developed by others.

Additionally, Eaton did not have the type of safety or quality control duties contemplated by 29 C.F.R. § 541.201(b). STC argues Eaton falls within the scope of the administrative exemption because he performed duties regarding the primary duty of "safety" and "quality control," relying on 29 C.F.R. § 541.201(b). But the type of "safety" and "quality control" work contemplated by § 541.201(b) does not include the work performed by Eaton.

The Fifth Circuit rejected an argument comparable to STC's in another case involving the oil and gas industry. In *Dewan*, the defendant argued all the work performed by Drilling Fluid Specialists was directly related to monitoring the drilling mud for quality control. The Fifth Circuit, however, noted that § 541.201(b) "identifies functional areas that are directly related to management and includes 'quality control' in a list that also contains 'areas such as tax; finance; accounting; budgeting; auditing; insurance; . . . purchasing; procurement;' and others." The Fifth Circuit thus reasoned the "regulation's reference to 'quality control,' particularly considering the list of which it is a part, seems to mean the quality of the mud being provided to M-I's customers and not with monitoring and adding materials to the mud as it is being used in drilling wells to ensure that its properties stay within the specifications set forth in the mud plan developed by project engineers."

The Western District of Texas made a similar finding in *Alawar v. Trican Well Serv., L.P.*, 397 F. Supp. 3d 873, 892 (W.D. Tex. 2019). "Trican avers that the Field Engineers' primary duty 'was to

12

monitor and ensure quality control and assurance, including quality control of the well-operation.' It explains that when a Field Engineer 'identified a problem, [he or she] notified and conferred with the Company Man and/or the Service Supervisor.' Thus, according to Trican, because the Field Engineers 'act[ed] as advisers or consultants to their employer's clients or customers,' they were exempt from the FLSA. 29 C.F.R. § 541.201(c). Trican's reliance on this provision is misplaced. The Field Engineers explain that their work was primarily functional and not conceptual, and involved 'monitoring the materials in the well to ensure they stayed within the parameters provided to them by the District Engineer, not the quality of materials that the company was selling to its customers.' Thus, they contend that their duties cannot be 'construed as administrative or work directly related to the management or general business' of Trican. Ultimately, the Court concludes there is a genuine material dispute that precludes summary judgment." *Alawar*, 397 F. Supp. 3d at 892 (internal citations omitted).

Thus, the type of safety and health job duties (like safety and quality control job duties) contemplated by § 541.201(b) are the development and creation of safety and health standards on behalf of the employer or its clients, not merely assuring it is being done in accordance with rules and specifications developed by others.

Similarly, the Court in *Bollinger v. Residential Capital, LLC*, 2012 WL 1945033 (W.D. Wash. May 30, 2012) recognized a comparable limitation on the scope of the enumerated § 541.201(b) functions. There, the Court examined Residential Capital's affirmative defense that its residential mortgage underwriters were exempt under the administrative exemption. In that case, the plaintiffs' primary duties "were to confirm that mortgage applications met Defendants' guidelines and secondary market guidelines." *Id.* at *1. In determining that plaintiffs did not meet the "directly related" prong of the administrative exemption, the *Bollinger* Court defined the "essence" of the "directly related" prong as "the running of the business, and not merely the day-to-day carrying out

of its affairs. *Id.* at *5. The Court then examined the list of functions contained in 29 C.F.R. § 541.201(b).

Regarding the § 541.201(b) list of functions, the Court stated that "[t]his list distinguishes between work that any employer needs performed—such as accounting, human resources, and regulatory compliance—and work that is particular to an employer's industry. The former is part and parcel of running a business and therefore exempt administrative work. The latter is not." *Id.* at *6. This highlights the distinction between the activities intended to be covered by § 541.201(b), and those that are not—**is it the type of work that *any* employer needs performed, or is it work that is particular to an employer's industry**? The answer regarding Eaton's duties is crystal clear—no supermarket, car dealership, restaurant, bank, law firm, or convenience store needs directional drilling services to run their business. Rather, this work is particular to STC's industry.

### F. STC Cannot Prove Eaton Performed Any of the Job Duties Requirements Under the Executive Exemption.

#### 1) The Executive Exemption

The Code of Federal Regulations states that:

The term "employee employed in a bona fide executive capacity" in Section 13(a) of the act shall mean any employee,

(1) compensated on a salary basis at a rate of not less than $455 per week ..., exclusive of board, lodging, or other facilities;

(2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) who customarily and regularly directs the work of two or more employees; and

(4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.l00(a). Thus, the Executive Exemption contains three job duties that can be established with the HCE test. STC asserts that Eaton meets the first two of the job duties

14

requirements for the Executive Exemption. Therefore, STC must prove that Eaton (1) customarily and regularly managed the enterprise in which the employee is employed or a customarily recognized department or subdivision thereof; or (2) customarily and regularly directs the work of two or more employees. *See* 29 C.F.R. § 100.

### 2) STC Cannot Prove Eaton Managed a Customarily Recognized Department or Subdivision

The requirement that the employee managed a "customarily recognized department or subdivision" is intended to distinguish between a "collection of employees assigned from time to time to a specific job or series of projects and a unit with permanent status and function." 29 C.F.R. § 541.103(a). "A customarily recognized department or subdivision must have a permanent status and a continuing function." *Id.*

STC's directional drilling units cannot be said to have the permanence or continuity necessary to constitute a customarily recognized department or subdivision. A directional drilling project lasts on average approximately three weeks. Once the project is completed, the members of the directional drilling unit are assigned to new projects. Very rarely were the DDs and MWDs assigned to the new project the same persons as had worked together at the previous project. In fact, it is well known STC tried to discourage and not to have same the same crews on successive rigs for fear that if client liked the DDs and they went to work for another directional company (a competitor to STC), STC might lose contract work to their competitor. Anklis Dec. at ¶ 19.

Additionally, this Court has previously determined that genuine issues of material fact exist as to this issue. ECF No. 476 at PageID # 7194.

### 3) STC Cannot Prove Eaton Supervised Two or More Employees

A DD cannot be said to supervise two or more employees when the three employees they are alleged to supervise are supervised by others as well. DDs are supervised by the DD Manager located in STC's Midland, TX office. Anklis Dec. at ¶ 17. MWDs are supervised by the MWD Office Manager,

15

also located in STC's Midland, TX office. DOL's regulations make clear that more than one employee cannot be credited with directing the work of the same "other employees" for purposes of the Executive Exemption. 29 CFR § 541.104(b) ("The supervision can be distributed among two, three or more employees, but each such employee must customarily and regularly direct the work of two or more other full-time employees or the equivalent. Thus, for example, a department with five full-time nonexempt workers may have up to two exempt supervisors if each such supervisor customarily and regularly directs the work of two of those workers."); 29 CFR § 541.104(d) ("Hours worked by an employee cannot be credited more than once for different executives. Thus, a shared responsibility for the supervision of the same two employees in the same department does not satisfy this requirement."). Section 541.104(b) makes clear that a department with only 4 full-time workers (such as Schlumberger's typical DD crew) cannot have two exempt supervisors.

**4. CONCLUSION**

STC's Motion for Summary Judgment regarding Joshua Eaton's claims should be denied.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: **/s/ Rex Burch**
  Richard J. (Rex) Burch
11 Greenway Plaza, Suite 3025
Houston, TX 77046
Email: rburch@brucknerburch.com

Michael A. Josephson, Esq.
**Josephson Dunlap Law Firm**
11 Greenway Plaza, Ste. 3050
Houston, TX 77046
Email: mjosephson@mybackwages.com

Kenneth W. DeJean, Esq.
**Law Offices of Kenneth W. DeJean**
P.O. Box 4325
Lafayette, LA 70502
Email: kwdejean@kwdejean.com

**COUNSEL FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed using the Court's ECF electronic filing system, which constitutes service on all counsel of record under the rules of this Court.

        **/s/ Rex Burch**
        Richard J. (Rex) Burch